# EXHIBIT A

STATE OF NEW YORK
SUPREME COURT : COUNTY OF NIAGARA

---

SUMMER SHINE-JOHNSON, Individually
And as Parent and Natural Guardian of
"S.J.", an Infant
555 27th Street
Niagara Falls, New York 14301

Plaintiff,

vs.

**SUMMONS**

Index No.

CITY OF NIAGARA FALLS
745 Main Street
Niagara Falls, New York 14301

POLICE OFFICER TOMMIE CALDWELL
1925 Main Street
Niagara Falls, New York 14305

POLICE OFFICER ANTHONY FRANJOINE
1925 Main Street
Niagara Falls, New York 14305

POLICE OFFICER RYAN GIZZARELLI
1925 Main Street
Niagara Falls, New York 14305

Defendants.

---

TO THE ABOVE-NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's Attorneys within TWENTY (20) DAYS after the service of this Summons, exclusive of the day of service (or within THIRTY (30) DAYS after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Niagara County is designated as the place of trial on the basis of residence of plaintiff who resides in Niagara Falls, New York.

DATED: Buffalo, New York
November 6, 2026

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By: */s/ Robert M. Corp*
ROBERT M. CORP, ESQ.

*Attorneys for Plaintiff*
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333

STATE OF NEW YORK
SUPREME COURT: COUNTY OF NIAGARA

---

SUMMER SHINE-JOHNSON, Individually
And as Parent and Natural Guardian of
"S.J.", an Infant,

Plaintiff,

**COMPLAINT**

vs.

Index No.

CITY OF NIAGARA FALLS,
POLICE OFFICER TOMMIE CALDWELL,
POLICE OFFICER ANTHONY FRANJOINE,
POLICE OFFICER RYAN GIZZARELLI,

Defendants.

---

Plaintiff, SUMMER SHINE-JOHNSON, Individually and as Parent and Natural Guardian of "S.J.", an Infant ("Plaintiff"), by her attorneys, LIPSITZ GREEN SCIME CAMBRIA LLP, for her Complaint against Defendants, alleges as follows:

## PARTIES

1. Plaintiff, at all times hereinafter mentioned, was and still is a resident of the City of Niagara Falls located within the County of Niagara and the State of New York.

2. Upon information and belief, Defendant CITY OF NIAGARA FALLS (the "City") is a municipal corporation organized under the laws of the State of New York and situated in Niagara County. The Niagara Falls Police Department ("NFPD") is an administrative arm of the City and is not named as a separate defendant.

3. Upon information and belief, at all relevant times, Defendant POLICE OFFICER TOMMIE CALDWELL ("Caldwell") was a police officer employed by the City and assigned to NFPD.

4. Upon information and belief, at all relevant times, Defendant POLICE OFFICER ANTHONY FRANJOINE ("Franjoine") was a police officer employed by the City and assigned to NFPD.

5. Upon information and belief, at all relevant times, Defendant POLICE OFFICER RYAN GIZZARELLI ("Gizzarelli") was a police officer employed by the City and assigned to NFPD.

6. At all relevant times, Caldwell acted under color of state law and within the scope of his City employment. He is sued in his individual capacity.

7. At all relevant times, Franjoine acted under color of state law and within the scope of his City employment. He is sued in his individual capacity.

8. At all relevant times, Gizzarelli acted under color of state law and within the scope of his City employment. He is sued in his individual capacity.

9. Caldwell, Franjoine and Gizzarelli are referred to collectively as the "Officer Defendants."

## JURISDICTION AND VENUE

10. This action seeks relief under 42 U.S.C. § 1983 and New York law, and this Court has jurisdiction over all claims. Venue is required in Niagara County under CPLR § 504(2) because the City is situated there and the events occurred there.

## CONDITION PRECEDENT

11. On or about the 10th day of November, 2025, Plaintiff timely served a Notice of Claim upon the CITY OF NIAGARA FALLS within ninety days after the claims arose. At least thirty days have elapsed since service, and the claims have not been adjusted or paid. Plaintiff and infant Plaintiff appeared for and completed examinations pursuant to General Municipal Law §

50-h on April 10, 2026. Plaintiff has satisfied all conditions precedent applicable to the state-law claims.

## FACTS

12. On the 12th day of August 2025, during the late evening, the infant Plaintiff, then sixteen years old, was outside of the 91st Street swimming pool area in the City of Niagara Falls when the Officer Defendants detained her and used the force described below.

13. Infant Plaintiff was a victim of an assault by an intoxicated female bystander. Following the assault, infant Plaintiff began walking away from the scene but had to turn back to recover her cell phone. The Officer Defendants were responding to the incident.

14. The bystander identified infant Plaintiff to the officers. Franjoine and Gizzarelli took hold of her arms and attempted to handcuff her. At that time, infant Plaintiff was unarmed, was not attempting to flee, was not physically resisting, and was not striking or attempting to strike the officers. She posed no immediate threat to the officers or anyone else when they took her to the ground.

15. Franjoine, assisted by Gizzarelli, then violently tackled infant Plaintiff to the ground, causing her head and face to strike the ground and injuring her face, head and left knee. The officers handcuffed infant Plaintiff behind her back while she was on the ground.

16. While infant Plaintiff was lying face down and handcuffed, Caldwell pressed his bodyweight upon her back and torso, and Gizzarelli pressed his bodyweight upon her legs. An Officer Defendant placed a knee into her back while she was helpless on the ground. The Officer Defendants continued this restraint after she was secured and no longer posed a threat warranting that force. Infant Plaintiff sustained severe injuries, including, without limitation, cuts, abrasions, bruising, and pain to her face, head and left knee; and other injuries, some of which are permanent.

17. Infant Plaintiff was released to her mother who had arrived on the scene. No criminal charges were filed against infant Plaintiff arising from this incident.

18. Shortly after the August 12, 2025 incident, infant Plaintiff sought treatment at John R. Oishei Children's Hospital of Buffalo for severe headaches, concussion, right facial pain, neck pain, and lower extremity pain**.** Infant Plaintiff continues to experience migraine headaches. Infant Plaintiff has also experienced and continues to experience symptoms of post-traumatic stress, and loss of enjoyment and quality of life, and she has received counseling concerning the events. Infant Plaintiff has incurred and may continue to incur medical expenses and other economic, consequential, general, and special damages.

19. As a result of infant Plaintiff's injuries, Plaintiff, SUMMER SHINE-JOHNSON, individually, has incurred and may continue to incur reasonable medical and related expenses for her daughter's care and treatment during her minority. She seeks those derivative damages under New York law.

20. This action falls within one or more of the exceptions set forth in CPLR § 1602.

## FIRST CAUSE OF ACTION

42 U.S.C. § 1983 - EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

(Against the Officer Defendants)

21. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

22. The Officer Defendants intentionally seized infant Plaintiff and used objectively unreasonable force against her through their respective acts described above.

23. The force used was unnecessary and excessive. Whatever authority Defendants may contend permitted them to take infant Plaintiff into custody did not authorize the use of objectively unreasonable force.

24. Infant Plaintiff posed no threat, was not fleeing, and did not physically resist arrest.

25. The force used by Franjoine and Gizzarelli in violently taking infant Plaintiff to the ground, while they already held her arms and she was not resisting or threatening anyone, was disproportionate to the circumstances and any legitimate need to restrain her. That takedown itself constituted excessive force and caused injury, independently of the force that followed. The continued application of bodyweight after she was handcuffed and controlled also exceeded any legitimate need to maintain custody.

26. By the unlawful actions described herein, each Officer Defendant, acting under color of state law, deprived infant Plaintiff of her Fourth Amendment right to be free from unreasonable seizure through unlawful, unnecessary, and excessive force.

27. At the time of this incident, it was clearly established that officers could not gratuitously slam an unarmed, nonresisting and nonthreatening person to the ground. Franjoine and Gizzarelli already held infant Plaintiff by her arms, and no reasonable officer in those circumstances could have believed that a violent takedown causing her head and face to strike the ground was lawful.

28. Separately, it was clearly established that officers could not continue significant force against a person who was already handcuffed, lying face down and controlled, and who was not resisting or posing a threat warranting that force. No reasonable officer in the circumstances alleged herein could have believed that the continued bodyweight and knee pressure were lawful.

29. The uses of force alleged herein were objectively unreasonable under the circumstances.

30. The Officer Defendants acted maliciously, intentionally, wantonly, and with reckless or callous disregard for infant Plaintiff's federally protected rights. Infant Plaintiff is therefore entitled to punitive damages against those Officer Defendants in an amount sufficient to punish and deter such conduct.

31. Plaintiff was required to hire attorneys to represent her in this matter and is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

32. As a direct and proximate result of the participating Officer Defendants' conduct, infant Plaintiff sustained all of the injuries and damages alleged herein, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

ASSAULT UNDER NEW YORK LAW

(Against All Defendants)

33. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

34. Through their respective acts described above in tackling infant Plaintiff to the ground and continuing to apply force, the Officer Defendants intentionally caused infant Plaintiff reasonably to apprehend immediate and further harmful or offensive contact.

35. The Officer Defendants intended to cause such apprehension, or knew with substantial certainty that their conduct would cause it, and they acted without infant Plaintiff's consent or legal justification.

36. As a direct and proximate result, infant Plaintiff sustained the injuries and damages alleged herein, and Plaintiff individually sustained the derivative damages alleged herein, in amounts to be determined at trial.

37. The Officer Defendants acted maliciously, deliberately, and with conscious disregard for infant Plaintiff's rights. Infant Plaintiff is entitled to punitive damages against the Officer Defendants in an amount sufficient to punish and deter such conduct.

38. The Officer Defendants acted within the scope of their City employment and in furtherance of City business. The City is therefore vicariously liable for their assault under the doctrine of respondeat superior.

**THIRD CAUSE OF ACTION**

BATTERY UNDER NEW YORK LAW

(Against All Defendants)

39. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

40. The Officer Defendants intentionally made harmful and offensive bodily contact with infant Plaintiff through their respective acts described above, including the takedown, the application of bodyweight to her torso and legs, and the kneeing in her back.

41. The harmful and offensive contact was made without infant Plaintiff's consent and without legal justification.

42. As a direct and proximate result, infant Plaintiff sustained the injuries and damages alleged herein, and Plaintiff individually sustained the derivative damages alleged herein, in amounts to be determined at trial.

43. The Officer Defendants acted maliciously, deliberately, and with conscious disregard for infant Plaintiff's rights. Infant Plaintiff is entitled to punitive damages against the Officer Defendants, but not against the City, in an amount sufficient to punish and deter such conduct.

44. The Officer Defendants acted within the scope of their City employment and in furtherance of City business. The City is therefore vicariously liable for their battery under the doctrine of respondeat superior.

## FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 - FAILURE TO INTERVENE IN EXCESSIVE FORCE

(Against the Officer Defendants)

45. Plaintiff realleges each preceding allegation with the same force and effect as if fully set forth herein.

46. To the extent any Officer Defendant did not personally commit a particular use of excessive force, that Defendant had an affirmative duty to intercede to prevent or stop the constitutional violation.

47. That Officer Defendant observed or had reason to know that excessive force was being used, was present and in close proximity, and had a realistic opportunity to prevent or stop at least part of the force, but failed to take reasonable steps to do so. This claim applies to the takedown and the continuing force on the ground to the extent that a nonparticipating Officer Defendant had a realistic opportunity to prevent or stop the particular force and resulting injury.

48. The failures to intervene violated infant Plaintiff's clearly established rights under the Fourth Amendment and 42 U.S.C. § 1983.

49. As a direct and proximate result, infant Plaintiff sustained all of the injuries and damages alleged herein and is entitled to compensatory damages, punitive damages against the responsible Officer Defendants, and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**

42 U.S.C. § 1983 - MUNICIPAL LIABILITY

(Against the City)

50. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

51. Upon information and belief, before August 12, 2025, the City maintained a custom or practice of tolerating excessive force during detention, including unnecessary takedowns and force against persons already restrained, through deficient investigation, supervision, corrective training and discipline of officers whose conduct had demonstrated a need for corrective action.

52. Upon information and belief, as shown by the incidents and reviews described below, the City’s customs and failures included:

a. Failing to enforce its written limits on unnecessary force, including violent takedowns and continued force against persons already controlled;

b. Failing to ensure complete and accurate force reports and meaningful review of all available video and witness accounts, including inconsistencies between those materials and officers’ descriptions;

c. Failing to require supervisors to identify, report, investigate and correct unnecessary force instead of approving it without adequate inquiry;

d. Failing to impose and follow through on effective discipline, retraining and heightened supervision after repeated force-related misconduct or adverse findings;

e. Failing to use complaint histories, internal investigations and risk-assessment procedures effectively to identify officers and tactics requiring further corrective action;

f. Failing to ensure effective corrective instruction in de-escalation, distinguishing actual resistance from nonresistance, and reducing force once control was achieved;

g. Failing to ensure that officers and supervisors carried out their duties to intervene against unnecessary force and to report it for meaningful review.

53. The City had prior notice of deficiencies in NFPD's handling of excessive force. A 2010 consent order required reforms in force reporting, supervisory review, internal investigations and identification of officers requiring closer monitoring or corrective action. Those requirements placed the City on notice of the need to identify repeated force complaints and correct recurring misconduct.

54. In its October 13, 2023 report, the New York Attorney General found that NFPD Officer Travis Maggard used excessive force in taking a woman to the ground during a May 11, 2022 arrest when there was no indication that she posed an immediate threat and she was not actively resisting. The report also found that the involved officers failed to file required force reports and that a lieutenant who reviewed video failed to ensure reporting; neither the lieutenant nor the Office of Professional Standards followed up with the complainant. The Attorney General recommended discipline and additional training for officers and supervisors. The report stated the Attorney General's understanding that, as of that report, NFPD no longer used a discipline matrix to determine penalties for misconduct.

55. The City's own investigations also provided notice concerning the Officer Defendants. In OPS 16-0016, concerning a May 2016 booking incident, the Deputy Superintendent

found that Caldwell punched a prisoner in the face at least twice after the prisoner spat on him, although the prisoner was not physically resisting or fighting. Two other officers intervened to prevent further punches. The initial supervisory review had approved the force, but subsequent internal reviews found that approval unsupported and the investigation inadequate. In February 2017, the Superintendent sustained the excessive-force allegation against Caldwell, imposed a one-day unpaid suspension and ordered six months of monitoring; additional force training had been completed in November 2016.

56. In the separate OPS 17-0003 investigation of a February 2016 incident at the Hometown II store, investigators concluded from surveillance video that Caldwell wrapped his arm around a man's throat and took him to the ground without visible resistance or pulling away. The Office of Professional Standards and Deputy Superintendent sustained the excessive-force allegation in May 2017. In December 2017, however, the Superintendent issued a final disposition of not sustained, stating that Caldwell's account was supported by the reports, video and other evidence.

57. In reviewing the May 2018 incident NF-03045-18, NFPD supervisors found that Caldwell used inappropriate force by grabbing and pushing an already secured, seated suspect onto his back. The recorded corrective response was counseling, and the Office of Professional Standards concurred with the supervisory findings but closed its review under a classification of appropriate conduct and no further action.

58. In OPS 22-0027, NFPD sustained findings that Franjoine used unnecessary force against a handcuffed woman in August 2022 by pushing her face first to the floor of a holding cell and injuring her. The Superintendent imposed a fifteen-working-day unpaid suspension and directed de-escalation training.

59. On May 21, 2025, in incident 2025-00020123, Franjoine and Gizzarelli reported striking the head or face of a handcuffed person and taking him to the ground, explaining that the force was intended to prevent further spitting. Supervisory reviews in July 2025 approved their force, and the recorded corrective response concerned their failure to timely activate body cameras.

60. Upon information and belief, these incidents and findings were known to the Superintendent and City officials responsible for police policy, supervision, training and discipline through the department's review process and the Attorney General's investigation. The records identified repeated unnecessary force, deficient initial reviews and failures to report or investigate force. Despite this notice, the City continued to tolerate inadequate review and failed to implement effective supervision, corrective training and discipline to prevent recurrence. The existence of written policies, training sessions and particular disciplinary measures did not remedy the continuing failures alleged herein.

61. Upon information and belief, City officials knew that NFPD officers would regularly detain and handcuff persons, including juveniles, and would have to decide whether a takedown or continued force was necessary. The incidents and investigative findings described above made the risk of recurring unnecessary force in those encounters apparent and called for effective corrective action.

62. The City's customs and failures amounted to deliberate indifference to the known risk that its officers would use violent takedowns without a proportionate need and continue unnecessary force after a person was controlled. By failing to identify and effectively correct those recurring practices despite the notice described above, the City permitted officers, including Caldwell and Franjoine, whose force-related conduct had drawn adverse internal findings, to

continue using unnecessary force. These failures were a moving force and proximate cause of the unnecessary takedown and subsequent force inflicted upon infant Plaintiff.

63. As a direct and proximate result, infant Plaintiff sustained the injuries and damages alleged herein and is entitled to compensatory damages against the City and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff asks this Court to GRANT the following relief:

Compensatory damages in an amount exceeding the jurisdictional limits of all lower courts that would otherwise have jurisdiction; punitive damages against the Officer Defendants; reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; costs, disbursements, and pre-judgment and post-judgment interest to the extent permitted by law; and such other and further relief as the Court deems just and proper. Plaintiff demands a trial by jury on all issues so triable.

DATED: Buffalo, New York
November 6, 2026

LIPSITZ GREEN SCIME CAMBRIA LLP

By: */s/ Robert M. Corp*

ROBERT M. CORP, ESQ.
Attorneys for Plaintiff
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333